```
        THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                              CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,         )       Case No. 2:`12CR00289 DS

              Plaintiff,          )
                                          MEMORANDUM DECISION
         vs.                      )    AND ORDER ADDRESSING MOTION
                                             TO SUPPRESS EVIDENCE
                                  )

OSIEL RUVALCABA AZPEITIA,         )

              Defendant.          )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

### I.  INTRODUCTION

Defendant Osiel Ruvalcaba Azpeitia has moved to suppress evidence obtained from the stop of his vehicle on May 20, 2012, by West Valley City, Utah, Police Officers.  An evidentiary hearing was held followed by post hearing briefing.

These are the relevant facts.  In February of 2012, a drug source named Juan Villalobos began negotiating with a Drug Enforcement Agency ("DEA") Confidential Source ("CS") about the delivery of a large amount of methamphetamine.  On May 20, 2012, Villalobos contacted the CS and stated that a car containing 50 pounds of methamphetamine had left Los Angeles at 7:00 a.m. and was on its way to Salt Lake City.  Villalobos said the car was being driven by man named Osiel.

At approximately 7:30 p.m. that same day, the CS contacted the driver at the telephone number given to him by Villalobos, and agreed with the driver to meet at the McDonald's off I-15 on Bangerter Highway. DEA Agents established surveillance at the McDonald's. At approximately 8:00 p.m., agents observed the CS arrive in the McDonald's parking lot.

Shortly thereafter, agents observed a blue FJ Cruiser with a California listing enter the parking lot. Agents observed the CS drive up to the FJ Cruiser and engage the driver and sole occupant in conversation. Because Agent Anson had placed a body wire on the CS, he was able to overhear the driver say that the drugs were in the rear compartment of the FJ Cruiser. Agent Anson also overheard the driver tell the CS that once this load was transferred successfully, Villalobos had one thousand pounds of methamphetamine in California, and that the CS could have as much of that as he needed. In addition, Agent Anson overheard the CS tell the driver of the FJ Cruiser to follow him to a place where they could unload the methamphetamine. Agents observed the driver of the FJ Cruiser follow the CS North on I-15 and exit on 3300 South and proceed Westbound.

Agents earlier had arranged for West Valley City Police Officers in marked units to do a "wall stop" of the FJ Cruiser where officers in the marked units would develop their own probable cause for the traffic stop to be able to protect the

informant's identity.  West Valley City Police Officers Dellinger and Zahlmann set up on 3300 South near 1300 West where they observed the blue FJ Cruiser identified by DEA agents traveling Westbound on 3300 South.  They were given the color, make and model of Defendant's vehicle, the California listing, and informed that the vehicle was occupied by one person.  They also were aware that DEA Agents suspected that the driver of the vehicle was transporting illegal drugs.

Officers Dellinger and Zahlmann followed the FJ Cruiser westbound, keeping watch for any observed traffic violations.  At about 3500 West, Officer Dellinger observed the driver of the FJ Cruiser activate the vehicle's left turn signal indicating his intention to change the position of his vehicle in the roadway, either by turning left or by changing to the left lane.  The FJ Cruiser did not turn left after the signal, but rather maintained its position in the number two lane as it continued to travel westbound on 3300 South.

Officer Dellinger believed the failure to turn after signaling was a violation of West Valley City Code Section 22-3-

3

104.1 Therefore, he activated his police lights and pulled the vehicle over on Bangerter Highway at approximately 3200 South. The driver was identified as Osiel Ruvalcaba, the Defendant in this matter.

While Officer Dellinger processed Ruvalcaba for traffic and insurance violations, Officer Zahlmann deployed his narcotics detection dog Lobo on the FJ Cruiser. Officer Zahlmann testified that Defendant left his door open when he exited the vehicle and that when he walked Lobo past the driver's side of the vehicle, Lobo spontaneously jumped inside.2  Lobo indicated the presence of narcotics in the rear interior of the FJ Cruiser.

Defendant, on the other hand, testified that he closed the driver's side door behind him when he exited the vehicle, and that as soon as Lobo was deployed, Officer Zahlmann open the FJ

---

[1]That Section provides: "It is unlawful for the driver of any vehicle giving or causing to be given any signal which would indicate to other traffic his intention to turn, to fail to make such a turn or to fail to yield the right-of-way to all other traffic which would be affected by his failure to complete the turn indicated."

[2]In response to questioing by Defense Counsel about it being unsafe for Defendant to pull his car over and leave the driver's side door open, Officer Zahlmann noted "Officer Dellinger and I had blocked the right lane completely with our vehicles, our overhead lights on, so that no traffic could travel in the far right lane." Tr. at 59.

Cruiser door and let Lobo inside.

The Court finds Officer Zahlmann to be a more credible witness than Defendant. Therefore, for purposes of the present motion, the Court finds Officer Zahlmann's account to be the true account of what transpired.

Lobo was removed from Defendant's vehicle and continued his sniff around the exterior portions of the automobile. He again alerted for the presence of narcotics near the passenger rear wheel.

Later the FJ Cruiser was searched and approximately 57 pounds of methamphetamine was found in the side panels just above the wheel wells in the rear of the vehicle.

## II.   DISCUSSION

### A.   Probable Cause to Stop Defendant's Vehicle.

Traffic stops are seizures within the meaning of the Fourth Amendment, which protects citizens from unreasonable searches and seizures. *United States v. White*, 584 F.3d 935, 944-45 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1271 (2010). "A routine traffic stop constitutes an investigative detention and is examined under the principles announced in *Terry v. Ohio*, 392 U.S. 1, 19-20 ... (1968)". *United States v. Williams*, 403 F. 3d

1203, 1206 (10th Cir. 2005).  The court makes a two step inquiry when addressing the reasonableness of an investigative stop.  The first inquiry is "whether the stop was justified at its inception."  *Id*.  The second inquiry is "whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop."  *Id*.

### 1. The Initial Stop

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, 129 S. Ct. 2881 (2009).  The officer's subjective motives are irrelevant and the Court examines only whether the stop was objectively justified. *White*, 584 F.3d at 945.  "An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

6

Officer Dellinger had probable cause or reasonable articulable suspicion to believe that a traffic violation of West Valley City Code had occurred.  As noted earlier, Defendant activated his left turn signal indicating his intention to change the position of his vehicle in the roadway, either by turning left or by changing to the left lane.  Defendant's vehicle did not turn left after the signal, but maintained its position in the number two lane as it continued to travel westbound.  Officer Dellinger reasonably could have believed that this was a violation of West Valley City Code.  The Court concludes, therefore, that the stop of Defendant's vehicle was justified at its inception.

**2. Scope of the Stop**

"'In addition to being justified at its inception, a lawful traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place.  A seizure that is justified solely by the interest in issuing a warning ticket to the driver may become unlawful if it is prolonged beyond the time reasonably required to complete that mission.'" *White*, 584 F.3d at 949 (quoting *United States v. Lyons*, 510 F.3d 1225, 1236 (10th cir. 2007), *cert. denied*, 552

U.S. 1329 (2008).3  Defendant does not assert that the scope of the stop was expanded beyond its original purpose and the Court concludes that it was not.  *See* discussion of K-9 search that follows.

**B. Search of Defendant's Vehicle Based on K-9 Alert.**

A "'traffic stop may be expanded beyond its original purpose if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity, that is to say the officer must acquire a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Clarkson*, 551 F.3d 1196, 1201 (10th Cir. 2009)).

While Officer Dellinger was processing the traffic violation, Officer Zahlmann, who was on scene, deployed his certified narcotics-detection dog Lobo to sniff Defendant's vehicle.4  Lobo alerted to the presence of narcotics on two

---

[3]During a routine traffic stop, an officer may request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings. *Untied States v. Williams*, 271 F.3d 1262, 1267-68 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002).

[4]It is un-controverted that Lobo's deployment and alert to the presence of narcotics occurred within a few minutes of the initial traffic stop and while Officer Dellinger was processing

8

occasions.5  Lobo's alert to the presence of narcotics in the vehicle was sufficient to give officers probable cause to search defendant's car.  *See Clarkson*, 551 F.3d at 1203 (a trained drug dog's alert for the presence of drugs establishes probable cause).

Defendant's position that police unlawfully conducted an interior search of his vehicle by allowing Lobo entry is rejected.  The credible evidence before the Court reflects that Defendant left his vehicle door open when he exited.  Because Lobo instinctively jumped into Defendant's vehicle through a door left open by Defendant, rather than being encouraged by its handler, no Fourth Amendment violation occurred.  *See United States v. Stone,* 866 F.2d 359, 364 (10th Cir. 1989)(finding no

---

the traffic violation. *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005)(holding that where officers did not extend the time necessary to resolve a lawful traffic stop, the arrival of another officer to the scene of a traffic stop in progress and that officer's use of a drug dog to sniff around the exterior of the car did not infringe the motorist's fourth Amendment rights).

[5]The first was when Lobo, without command, jumped into the vehicle through the open driver's door and alerted to the odor of narcotics in the rear of the vehicle.  When Officer Zahlmann removed Lobo from the vehicle and had him continue with his exterior sniff around the vehicle, Lobo again alerted to the presence of narcotics near the passenger rear wheel well.

Fourth Amendment violation where a dog "instinctive[ly]" jumped into an open hatchback and where "[t]here [was] no evidence ... that the police asked [the defendant] to open the hatchback so the dog could jump in" and no "evidence the police handler encouraged the dog to jump in the car").

### C. DEA Agents' Probable Cause.

The Court also agrees with the United States that because DEA Agents had probable cause to believe that a crime was being committed and that the FJ Cruiser contained contraband, Officers Dellinger and Zahlmann had an alternative or independent basis for the stop and search of Defendant's vehicle. In addition to the traffic violation, West Valley Police Officers were entitled to and did properly act on the strength of the DEA Agents' probable cause that a drug offense was being committed to lawfully stop, and search Defendant's vehicle.6 "The police may

---

[6] See Untied States v. Chavez, 534 F.3d 1338, 1348 (10th Cir. 2008), *cert. denied*, 555 U.S. 1121 (2009)(court found that officer "acted on the strength of the DEA's probable cause when he stopped and searched [defendant's] truck. He merely supplied a cover story (the putative headlight infraction) that would mask the basis for his alternative probable cause (the drug trafficking). '[D]isguising the stop as a "traffic stop" was a valid law enforcement tactic calculated to ensure an officer's safety,' ... and safeguard the CS's identity and the integrity of the DEA investigation.").

stop a car if they have probable cause or a reasonable, articulable suspicion to believe the car is carrying contraband." *United States v. Chavez*, 534 F.3d 1338, 1333 (10th Cir. 2008), *cert. denied*, 555 U.S. 1121 (2009). "'Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence.'" *Chavez*, 534 F.3d at 1344 (citation omitted). "[A] traffic stop will be held reasonable when, under the totality of the circumstances, the officer bears a reasonable suspicion that criminal activity may be afoot". *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007), *cert. denied*, 552 U.S. 1123 (2008)(citation and internal quotation marks omitted)[7]

The Court adopts the following statement of facts and analysis as set forth by the United States as support for the conclusion that agents had probable cause to stop and search

---

[7]*See also Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir.2007) ("[p]robable cause is based on the totality of the circumstances, and requires reasonable trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime"); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed").

11

Defendant's vehicle.

> In this case, agents had learned through a telephone call between a source of supply and a CS that a load of methamphetamine was being sent from California to Salt Lake City on May 20, 2012. The driver of the load car agreed to meet with the CS at a parking lot in Draper, Utah. While in the parking lot, the driver confirmed that the methamphetamine was in the rear compartment of the vehicle, and that the source of supply had more methamphetamine to deliver to the CS once the current load was successfully transferred. The driver agreed to follow the CS to a storage area where the two could unload the methamphetamine out of the FJ Cruiser.
> That knowledge gained by officers in their investigation established probable cause that methamphetamine would be found in the FJ Cruiser. The defendant told the CS that the methamphetamine was in the car, and that conversation was overheard by agents through the use of the body wire.

Mem. Opp'n at 8-9

This case implicates the vertical category of the "fellow officer rule", also known as the "collective knowledge doctrine". That doctrine applies to "a situation where one officer has probable cause and instructs another officer to act, but does not communicate the corpus of information known to the first officer that would justify the action." *Chavez*, 534 F.3d at 1345.8,    In

---

[8]Favorably citing other cases, the *Chavez* court further stated:
> Extrapolating from *Hensley*, those circuits that have addressed squarely the issue presented here have held that a police officer may rely on the instructions of the DEA (or other law enforcement agencies) in

such a situation the DEA task force's knowledge of which they had reasonably trustworthy information may be imputed to other officers to permit the other officers to make an arrest. *Id*. at 1348.

As discussed, DEA Agents had probable cause to stop and search the Defendant's vehicle. DEA Agents gave West Valley Officers a description of the suspect vehicle as well as a license plate number or listing, and had followed the vehicle to the position where West Valley Officers got behind the correct

---

stopping a car, even if that officer himself or herself is not privy to all the facts amounting to probable cause. *See United States v. Ramirez*, 473 F.3d 1026, 1037 (9th cir. 2007)("Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search or arrest without violating the Fourth Amendment"); *United States v. Williams*, 429 F.3d 767, 771-72 (8th Cir. 2005)("[W]e also hold that the collective knowledge of the DEA team was sufficient to provide reasonable suspicion to stop [the co-defendant's] vehicle, and such knowledge was imputed to the officer at the scene when he received [another officer's] radioed request."); *United States v. Burton*, 288 F. 3d 91, 99 (3d Cir. 2002)("[T]he arresting officer need not possess an encyclopedic knowledge of the facts supporting probable cause, but can instead rely on an instruction to arrest delivered by other officers possessing probable cause.").

Chavez, 534 F.3d at 1347.

vehicle. West Valley Officers were aware that DEA Agents had reason to suspect that the Defendant's vehicle contained illegal drugs.

Because DEA Agents had probable cause to stop and search Defendant's vehicle, which is imputed to West Valley Officers under the collective knowledge doctrine, the stop and search of Defendant's vehicle was lawful.

### D. Search Warrant Not Required

Finally, Defendant's position that because of the lack of exigent circumstances, the government was not excused from its obligation to seek a search warrant is rejected. *See e.g.* Chavez, 534 F.3d at 1345 (citation omitted)("[t]he 'automobile exception' to the warrant requirement permits law enforcement officers who have 'probable cause to believe a car contains contraband [to] search the car without first obtaining a search warrant").

### III. CONCLUSION

For the reasons stated, as well as generally for those set forth by the United States in its pleadings, the Motion to

Suppress (Doc. #24) is denied.

    IT IS SO ORDERED.

    DATED this 6th day of March, 2013.

                                          BY THE COURT:

                                          *[signature: David Sam]*

                                          DAVID SAM  
                                          SENIOR JUDGE  
                                          UNITED STATES DISTRICT COURT